UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VAN ZEELAND OIL CO., INC., a
Wisconsin Corporation,

    Plaintiff,

v.
                                            Case No. 2:09-cv-150
                                            HON. R. ALLAN EDGAR

LAWRENCE AGENCY, INC., a Michigan
Corporation, d/b/a CENEX PIT STOP, and
PEOPLES STATE BANCORP, INC., a
Michigan Corporation, d/b/a PEOPLES
STATE BANK OF MUNISING,

    Defendants.
_____/

**MEMORANDUM**

Plaintiff Van Zeeland Oil Company, Inc. ("Van Zeeland") brings this action for breach of contract, unjust enrichment, and reformation against defendants Lawrence Agency, Inc. d/b/a Cenex Pit Stop ("Lawrence Agency") and Peoples State Bancorp, Inc. d/b/a Peoples State Bank of Munising (the "Bank"). The court previously entered a default judgment in favor of Van Zeeland against the Lawrence Agency. [Court Doc. No. 15]. The remaining parties in this action have filed cross motions for summary judgment. [Court Doc. Nos. 11, 16]. Both remaining parties oppose the motions for summary judgment filed against them, and these motions are now ripe for this court's review.

This court has jurisdiction over this action due to the complete diversity of the parties pursuant to 28 U.S.C. § 1332. The court has reviewed the record, the applicable law, and the arguments of the parties. It concludes that the motion for summary judgment filed by Defendant

Bank will be **GRANTED** and that Plaintiff Van Zeeland's motion for summary judgment will be **DENIED**.

I.  Background

The central issue in this action is whether Plaintiff Van Zeeland complied with the strict terms of a letter of credit implicating the Bank's duty to honor the letter by submitting to Van Zeeland the amount of fifty thousand dollars ($50,000). The parties agree on the material facts. According to the complaint [Court Doc. No. 1 ("Complaint")], Plaintiff operates a business that sells and distributes petroleum products. Complaint, ¶ 9. Defendant Lawrence Agency operated a gas station in Manistique, Michigan. *Id.* at ¶ 10. The Lawrence Agency and Plaintiff entered into a ten-year agreement entitled the Detailed Dealer Motor Fuel Agreement ("Agreement") that operated from June 27, 2008 until June 27, 2018. *Id.* at ¶ 11. Although the specific terms of the Agreement are not legally relevant to this matter, the Agreement's provisions contained Lawrence's commitment to purchase from Plaintiff 100% of the gasoline it sold during the ten-year term of the Agreement. *See* Complaint, ¶ 12; [Court Doc. No. 1-2, Agreement]. The Agreement further required the Lawrence Agency to provide Plaintiff with a letter of credit in the amount of $50,000. Agreement, ¶ 4.01. Todd Van Zeeland and Gary Grams signed the Agreement on behalf of Van Zeeland. Rudolph Lawrence signed the Agreement without indicating for which entity he signed, but the parties appear to agree that he signed on behalf of the Lawrence Agency. He also indicated the word "Pres." after his name apparently indicating his status as President of Defendant Lawrence Agency.

On June 30, 2008 the Bank issued "Irrevocable Standby Letter of Credit No. 691." [Court Doc. No. 1-3 ("Letter of Credit")]. The Letter of Credit states that Van Zeeland is the

"Beneficiary" and that the "Applicant" is "Van Zeeland Oil Customer Daryl E. and Michele A. Lawrence." *Id.* The parties agree that Daryl Lawrence is the son of Rudolph Lawrence. The Letter of Credit states in its entirety:

> We hereby establish our Irrevocable Standby Letter of Credit No. 691 in your favor at the request and for the account of Van Zeeland Oil Company, Inc. (the "Applicant") in the amount of $50,000.00 U.S. dollars effective June 30, 2008.
>
> This Letter of Credit is available with the People State Bank of Munising by payment against presentation of your sight draft(s) drawn on the Peoples State Bank of Munising of Credit No. 691 dated June 30, 2008, and accompanied by your signed and dated statement stating:
>
> "Van Zeeland Oil Company, Inc. hereby represents, certifies, and warrants that the amount of the accompanying draft represents funds due and owing to Van Zeeland Oil Company, Inc. by the Applicant for purchases of products and services by Applicant from Van Zeeland Oil Company, Inc. according to such terms as are established by Van Zeeland Oil Company, Inc. from time to time or pursuant to a Retail Supply Agreement and/or Image Rebate Reimbursement Agreement executed by Van Zeeland Oil Company, Inc. and the Applicant.["]
>
> Partial drawings under this Letter of Credit are allowed and each such partial drawing will reduce the amount thereafter available hereunder for drawings under this Letter of Credit.
>
> This Letter of Credit sets forth in full the terms of our undertaking and such undertaking shall not in any way be modified, amended, or amplified by reference to any document, instrument, or agreement referred to herein or in which this Letter of Credit is referred to our [sic] to which this Letter of Credit relates, and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement.
>
> We hereby engage with you that draft(s) drawn under an [sic] in compliance with the terms of this Letter of Credit will be duly honored by us when presented to our office at 100 E. Superior Street, P.O. Box 158, Munising, Michigan 49862. It is a condition of this Letter of Credit that it shall be automatically extended without amendment for a period of one year from the present or any future expiration date, unless ninety days prior to the expiration we shall notify you in writing via registered or certified mail courier or by messenger that we elect not to extend the validity. Failure to give such notice will cause this Letter of Credit to automatically renew and remain in full force and effect.

Letter of Credit. Richard Nebel signed the Letter of Credit on behalf of the Bank as its chief executive officer ("CEO").

Plaintiff asserts that Defendant Lawrence Agency accepted a final delivery of gasoline on December 8, 2008, only six months into the contract. Complaint, ¶ 15. According to the Complaint, the Lawrence Agency breached the terms of the Agreement by failing to continue to purchase gasoline from Plaintiff for a remaining 114 months under the terms of the Agreement. *Id.* at ¶¶ 16-18.

On January 8, 2009 Todd Van Zeeland wrote Richard Nebel at the Bank requesting that the Bank honor the Letter of Credit and quoted the specified language required under paragraph 3 of the Letter of Credit. [Court Doc. No. 1-4]. The letter attached a draft and summary of alleged debt owed to Plaintiff, including amounts totaling $113,712.28 for such items as uniforms, materials, services, Cenex image elements, freight, installation, and labor. *Id.* The Complaint asserts that the Bank verbally refused to honor the submitted Letter of Credit because the applicant for the Letter of Credit differed from the company that signed the Agreement. Complaint, ¶ 33.

On May 29, 2009 Mr. Van Zeeland again wrote Mr. Nebel at the Bank and quoted the requested language from the Letter of Credit asking the Bank to honor the Letter of Credit by paying Plaintiff $50,000. [Court Doc. No. 1-5]. The request pursuant to the Letter of Credit was accompanied by a document entitled "Sight Draft" in the amount of $50,000.

On June 10, 2009 Mr. Nebel responded to Plaintiff's request by writing a letter to Plaintiff's attorney, Clifford Knaggs. [Court Doc. No. 1-6]. The letter states:

> Thank you for your letter dated June 2, 2009. Unfortunately, the bank

cannot honor the most current sight-draft dated May 29, 2009 for the same reason that existed back in January, 2009.

It is the position of the bank and our customer that the letter of credit you reference required the "Applicant" of the letter of credit owe money to Van Zeeland Oil Company. Our applicant that sought the letter of credit was Daryl Lawrence and his wife, Michele Lawrence. The letter of credit states as follows: "Van Zeeland Oil Company, Inc. hereby represents, certifies, and warrants that the amount of the accompanying draft represents funds due and owing to Van Zeeland Oil Company, Inc., by the Applicant for purchases of products and services by Applicant from Van Zeeland Oil Company, Inc. according to such terms as are established by Van Zeeland Oil Company, Inc. from time to time or pursuant to a Retail Supply Agreement and/or Image Rebate Reimbursement Agreement executed by Van Zeeland Oil Company, Inc. and the <u>Applicant</u>."

Our applicants (customers) in this situation were Daryl Lawrence and Michele Lawrence, not Lawrence Agency, Inc., d.b.a. Centex [sic] Pit Stop. The letter of credit is void of any reference to Lawrence Agency, Inc., d.b.a. Centex [sic] Pit Stop as the "applicant". Do our customers (applicants) of the letter of credit, Daryl Lawrence and Michele Lawrence currently owe Van Zeeland Oil Company for any product and/or service?

We agree that the beneficiary in the letter of credit is Van Zeeland Oil Company and the Peoples State Bank of Munising is the referenced bank, however, we disagree that our "applicant" for the letter of credit owes any money for product or services to Van Zeeland Oil Company. . . .

[Court Doc. No. 1-6].

Following the Bank's second refusal to honor the Letter of Credit, Plaintiff brought this suit against the Lawrence Agency and the Bank. Plaintiff claims that the Bank breached its obligation under the Letter of Credit and seeks $50,000 from the Bank. The CEO of the Bank, Richard Nebel, filed an affidavit in support of the Bank's position. [Court Doc. No. 19-2, Affidavit of Richard W. Nebel ("Nebel Aff.")]. In his affidavit he stated in part:

At the time that the letter of credit was requested by Daryl Lawrence, Lawrence Agency, Inc. was unable to secure any credit from the Peoples State Bank.

At the time that the letter of credit was requested by Daryl Lawrence I was aware of the family relationship between Daryl Lawrence and the principles of Lawrence Agency, Inc., but it was my understanding that Daryl Lawrence was not an owner or officer of Lawrence Agency Inc.

> Daryl Lawrence provided all of the information that was to be included in the letter of credit including naming Van Zeeland Oil as the beneficiary and Daryl Lawrence as the applicant without any reference to Lawrence Agency, Inc. . . .
>
> The Peoples State Bank/Lawrence letter of credit (Exhibit A to Complaint) establishes no contractual obligation to pay for any products purchased from Van Zeeland Oil by anyone other than Daryl or Michelle Lawrence. . . .

Nebel Aff., ¶¶ 4-9. Daryl Lawrence also provided an affidavit in support of the Bank's position, noting that "[a]t no time have I ever been a member, officer, or director of Defendant Lawrence Agency, Inc[.] or the Defendant Peoples State Bank in any capacity whatsoever." [Court Doc. No. 11-3, Affidavit of Daryl E. Lawrence ("Lawrence Aff."), ¶ 3]. Plaintiff offers the charge application completed by Daryl Lawrence as evidence of Mr. Lawrence's position at Defendant Lawrence Agency. [Court Doc. No. 18-4]. Mr. Lawrence indicated on the application that his employer was Inergy Propane, LLC, and he signed the bottom of the application as Daryl Lawrence, Owner. *Id.* However, although the document contained a blank indicating the name of the company above the authorized signature line, Mr. Lawrence left the company name space blank. *Id.* On the Electronic Funds Transfer Agreement, Mr. Daryl Lawrence completed the customer name as "Daryl Lawrence [ ] N.I., Inv. DBA Cenex Pit Stop" and signed the application as "Daryl Lawrence N.I., Inv." and with the title of "Owner." [Court Doc. No. 18-5].

## II.     Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.

**III. Analysis**

Letters of credit under Michigan law are governed by Article 5 of Michigan's version of the Uniform Commercial Code ("UCC"), Mich. Comp. Laws § 440.5101 *et seq.* Article 5 of Michigan's UCC defines "letter of credit" in the following way: "a definite undertaking that satisfies the requirements of section 5104 by an issuer to a beneficiary at the request or for the

account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value." Mich. Comp. Laws § 440.5102(j). Michigan law also provides that:

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

Mich. Comp. Laws § 440.5103(4). Further, Article 5 makes clear that except in cases involving fraud:

> an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (5), appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in section 5113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear to comply.

Mich. Comp. Laws § 440.5108(1). An issuer, however, "is not responsible for: [t]he performance or nonperformance of the underlying contract, arrangement, or transaction" or "[a]n act or omission of others." Mich. Comp. Laws § 440.5108(6)(a)-(b).

Michigan law regarding letters of credit has been adopted largely from Article 5 of the UCC. The Official Comment to Article 5 provides further guidance on the meaning of letters of credit. The Official Comment to the definitions section provides that

> . . . undertakings whose fundamental term requires an issuer to look beyond documents and beyond conventional reference to the clock, calendar, and practices concerning the form of various documents are not governed by Article 5. Although Section 5-108(g) recognizes that certain nondocumentary conditions can be included in a letter of credit without denying the undertaking the status of letter of credit, that section does not apply to cases where the nondocumentary condition is fundamental to the issuer's obligation.

U.C.C. § 5-102 (2002), Official Comment. The Official Comment to UCC § 5-108 states that

"[t]he responsibility of the issuer under a letter of credit is to examine documents and to make a prompt decision to honor or dishonor based upon that examination. Nondocumentary conditions have no place in this regime and are better accommodated under contract or suretyship law and practice." U.C.C. § 5-108 (2002), Official Comment.

Michigan courts have not had very many opportunities to address letters of credit pursuant to Article 5. However, two relevant decisions exist that provide further guidance regarding the legal interpretation of letters of credit. In *Toyota Tsusho Corp. v. Comerica Bank* the federal district court explained the law pertaining to letters of credit in Michigan in general terms. 929 F.Supp. 1065, 1070-71 (E.D. Mich. 1996). It noted that:

> A [letter of credit] is a contract between a bank and a beneficiary of credit that is separate and distinct from the commercial contract between the beneficiary (usually a seller), and the bank's customer (usually a buyer). The [letter of credit] is not dependent upon the underlying commercial transaction, and in determining whether to pay, the bank looks only at the [letter of credit] and the documentation presented by the beneficiary to determine whether it meets the [letter of credit's] requirements.
>
> The majority view, which has been expressly adopted by Michigan courts, is a standard of "strict compliance" with a [letter of credit's] presentment requirements. . . . The purpose behind this "strict compliance" standard is to promote the predictability and swiftness of a determination to honor or dishonor a draw request on [a letter of credit] and to make the processing of [letters of credit] more efficient.

*Id.* (citing *Osten Meat Co. v. First of America Bank-Southeast Michigan*, 517 N.W.2d 742 (Mich. Ct. App. 1994)).

The Michigan case that analyzes Michigan law regarding letters of credit to the greatest extent is *Osten Meat Co.* 517 N.W.2d 742. In addressing an issue of first impression, the court of appeals determined that strict compliance with the terms of the letter of credit – i.e. that "the

papers, documents, and shipping descriptions must be as stated in the letter of credit" was the appropriate rule to apply in Michigan. *Id.* at 745-46. In justifying its rejection of the substantial compliance standard, the court stated:

> In a letter of credit transaction, the issuing bank's duty with respect to a letter of credit is purely ministerial. The bank's representative, who knows nothing of the parties, the underlying transaction, or the practices of the industry concerned, checks presented documents carefully against the requirements of the credit. Under a strict compliance standard, if the documents comply, the draft is paid. If there is a discrepancy between the requirements of the letter of credit and the submitted documents, the draft is not paid and the beneficiary is notified of the reason for the dishonor. The beneficiary then has the right to resubmit the correct documents before the credit expires.
>
> A substantial-compliance standard would impose a duty on the bank to investigate the underlying transaction whenever a discrepancy is found between the documents submitted and the credit to determine whether a discrepancy is significant. Such a duty would negate the credit's advantages, that is, its independence from the underlying transaction and the predictability and swiftness of the determination to honor or dishonor a draw request.

*Id.* at 745. The court of appeals acknowledged that "a misspelling or other flyspeck discrepancy" may not negate strict compliance if any "deviation from the letter's terms could not possibly have misled any issuer." *Id.* at 747. It held, however, that strict compliance did not exist and the bank was entitled to dishonor the letter of credit where the beneficiary submitted an affidavit stating that all the attached invoices remained unpaid, but several of the invoices were, in fact, marked "paid." The court concluded that the discrepancies were sufficient to reject the letter of credit. *Id.* at 747-49.

It is true, as Plaintiff argues, that there are commercial transactions in which the applicant for the letter of credit is not a party to the underlying contract with the beneficiary of the letter of credit. In such a situation, the applicant might be a shareholder owning an interest in the party to

the underlying contract with the beneficiary of the letter of credit. Michigan law even defines "applicant" as including "a person who requests an issuer to issue a letter of credit on behalf of another if the person making the request undertakes an obligation to reimburse the issuer." Mich. Comp. Laws § 440.5102(b). Thus, it is clear that the law does not require an applicant for a letter of credit to be a party to the underlying contract.

Plaintiff relies on *Leica Geosystems, AG v. Jefferson Cty.* in support of this proposition. No. 08-15706, 2009 WL 1143176 (11th Cir. Apr. 29, 2009). In that case the defendant was a county in Alabama that awarded a contract for computer software to a company called NovaLIS. *Id.* at *1. The county agreed to accept a letter of credit from NovaLIS, and NovaLIS recruited a minority shareholder, Leica, to fund the letter of credit. Leica agreed and obtained the letter of credit in the amount of $1,616,000 with Leica listed as the applicant and Jefferson County noted as the beneficiary. *Id.* When NovaLIS defaulted on the contract, Jefferson County withdrew the entire amount on the letter of credit. *Id.* at *2. However, in that case the bank was not a party to the litigation, and there was no question regarding whether the bank improperly honored the letter of credit. In addition, the court's opinion does not reveal the precise terms of the letter of credit so this court has no way of knowing why the question of honoring the letter of credit was not at issue.

Other courts have examined situations in which the applicant for the letter of credit was not a party to the underlying contract. For example, in *Carlson v. Branch Banking and Trust Co.* the applicant for the letter of credit was a retired physician interested in making an investment and helping a family friend, the party to the underlying contract. 473 S.E.2d 631 (N.C. Ct. App. 1996); *see also, Suntex Indust. Corp., Ltd. v. The CIT Group/BBC, Inc.*, No. 99-81-RRM, 2001

WL 34401367 (D. Del. 2001) (guarantor of letter of credit was shareholder company for party to the underlying contract). In *Carlson* the plaintiffs, a retired couple, agreed to help their friend, the sole owner and founder of an investment company called Carolina First. They agreed to supply Carolina First with a letter of credit of $500,000 so that Carolina First could purchase the majority share of a mutual fund company. *Id.* at 632. Plaintiffs believed the funds were to be used strictly for the purchase of the mutual fund company. *Id.* at 633. The court's opinion lays out the precise language of the letter of credit, which indicated that the applicants were the plaintiffs and the defendant bank was the beneficiary. The letter of credit required that the defendant bank provide the issuing bank with a letter "purportedly signed by an authorized officer of Branch Banking & Trust Company, Winston-Salem, North Carolina, stating that payment is due under promissory note dated August 2, 1990 in the amount of four hundred twenty-five thousand and no/100 ($425,000.00) U.S. Dollars by and between Carolina First Holding Corporation and Branch Banking and Trust Company." *Id.* at 309. The issuing bank also required that the original letter of credit be presented.

However, the State of North Carolina placed Carolina First into receivership, and Carolina First's contract to purchase the mutual fund company became null and void before the letter of credit was even issued. *Id.* at 311. The defendant bank demanded payment on the letter of credit as the sole owner of Carolina First had withdrawn the loan money, not to purchase the mutual fund company, but to finance such items as a personal car and home construction. *Id.* The issuing bank paid the defendant bank based on the defendant's compliance with the terms of the letter of credit, and the plaintiffs then reimbursed the issuing bank for its payment on the letter of credit. The plaintiffs then sued the defendant bank, which made the loan to Carolina

First for purchase of the mutual fund company, alleging several different state claims, including fraud and negligence.

The court of appeals affirmed the directed verdict in favor of the defendant on plaintiffs' fraud and unfair practices claim and determined that the defendant was also entitled to a directed verdict on plaintiffs' negligence claim. *Id.* at 315-16. The court held that the defendant bank undertook no duty in the letter of credit to monitor the use of the loan proceeds. *Id.* at 315. It noted that "[i]n the absence of any express provision in plaintiffs' letter of credit requiring that defendant BB&T monitor the use made by Carolina First and Schamens of the loan proceeds to assure their use for the intended purpose of the loan, defendant owed plaintiff no legal duty to do so." *Id.*

In *Carlson*, in contrast to the action at hand, the letter of credit mentioned the name of the party to the underlying contract, Carolina First, as the entity whose default would trigger a duty to honor the letter of credit. In this case the letter of credit required Plaintiff to assert that:

> Van Zeeland Oil Company, Inc. hereby represents, certifies, and warrants that the amount of the accompanying draft represents funds due and owing to Van Zeeland Oil Company, Inc. by the Applicant for purchases of products and services by Applicant from Van Zeeland Oil Company, Inc. according to such terms as are established by Van Zeeland Oil Company, Inc. from time to time or pursuant to a Retail Supply Agreement and/or Image Rebate Reimbursement Agreement executed by Van Zeeland Oil Company, Inc. and the Applicant.

Letter of Credit, ¶ 3. Before honoring the Letter of Credit, the Bank would have been entitled to check with the applicants named in the Letter of Credit, Daryl and Michele Lawrence, to determine whether they personally owed funds to Van Zeeland based on a contract they entered with Plaintiff or other purchases from Plaintiff. Otherwise honoring the Letter of Credit might have exposed the Bank to liability for wrongful honor. Nowhere in the Letter of Credit does it

-13-

mention the name of the Lawrence Agency, Cenex Pit Stop, or Rudolph Lawrence. This appears to have been by design as the Bank indicates that it did not wish to extend credit to Lawrence, and it appears that Daryl Lawrence also did not intend to be responsible for his father's business. *See* Nebel Aff., ¶ 4; Lawrence Aff. ¶¶ 3-6.

Very few state or federal cases appear to address situations analogous to the current action. In this case the applicants for the line of credit, Daryl and Michele Lawrence, assert that they are unrelated to the Lawrence Agency, the entity allegedly in breach of the Agreement pursuant to which the Plaintiff required a letter of credit be provided. In most cases the purchaser or party to the agreement is also the same party as the applicant for the line of credit or else the applicant agrees to payment upon the default of the party to the underlying contract. However, the court has located one state case from Illinois that addresses relationships similar to the ones present in this case.

In *Auto-Owners Ins. Co. v. South Side Trust & Savings Bank*, the state appellate court addressed a performance bond issued by the plaintiff on behalf of a company performing electrical work. 531 N.E.2d 146, 147 (Ill. Ct. App. 1988). A father and son team, George and Don Collins, operated the electrical corporation, and the son, Don Collins, was the president of the company. *Id.* The company received an opportunity to perform the electrical work relating to the construction of a large big-box store, but it needed to secure a performance bond of $200,000. The son, Don Collins, worked with an insurance agent, who then helped to obtain a performance bond from plaintiff, on the condition of issuance of an irrevocable letter of credit. The insurance agent then asked the defendant bank to issue a letter of credit for the company. *Id.* at 147-48. The bank indicated that it had already extended the company a line of credit and that

the bank would not issue an irrevocable letter of credit for the company. *Id.* Thus, the electrical company was unable to obtain the necessary bond on its own from the defendant bank. However, the bank was willing to issue an irrevocable letter of credit for the father, George Collins, if he was listed as the principal on the bond. *Id.* at 148. The defendant bank indicated that "[w]ithout George Collins' involvement in the entire project, bond, and letter of credit, along with his expertise as an electrician, the defendant would not have issued the letter of credit." *Id.* Neither the plaintiff nor the defendant wanted to bear the risk of loss of the company's failure to perform, due to the financial condition of the company. *Id.* at 149. The plaintiff, failing to read the letter of credit carefully, issued the performance bond to the electrical company and not to George Collins. *Id.* Not surprisingly, the company defaulted on the job. At first the bank assumed that it had to honor the letter of credit and paid a partial amount to the plaintiff. However, once it discovered that George Collins was not listed as the recipient of the bond, as required by the strict terms of the letter of credit, it refused to honor the letter of credit further. The plaintiff then sued to force the defendant bank to honor the letter of credit.

As in Michigan, Illinois also requires strict compliance with the terms of a letter of credit. *See Auto-Owners Ins. Co.*, 531 N.E.2d at 151. In *Auto-Owners Ins. Co.* the court concluded that the plaintiff had not strictly complied with the terms of the letter of credit because it listed the company as the principal on the bond, and the letter of credit required that the principal on the performance bond be George Collins. *Id.* The court affirmed the trial court's determination that the bank had a right to refuse to honor the letter of credit and that no mutual mistake existed. *Id.* at 151-52.

This case is strikingly similar to the *Auto-Owners Ins. Co.* case. The Plaintiff argues that

the Bank must honor the letter of credit because Daryl and Michele Lawrence were the applicants and Daryl Lawrence held himself out as the "owner" of Defendant Lawrence. However, such an argument would require the Bank to analyze documents other than the Letter of Credit. In addition, as Plaintiff admits, the underlying Fuel Agreement has no place in the Bank's analysis of whether to honor the Letter of Credit. The Letter of Credit clearly indicates that it is the "Applicant" who must owe funds to Plaintiff, and there is no evidence provided either in the Plaintiff's submission of documents with the Letter of Credit or evidence provided to this court that the applicants, Daryl and Michele Lawrence, were parties to the underlying Fuel Agreement or otherwise owed funds to the Plaintiff. While Mr. and Mrs. Lawrence could have decided to obligate themselves to pay upon Defendant Lawrence Agency's default, they did not. The Letter of Credit nowhere mentions that the Bank would honor the Letter of Credit if the Defendant Lawrence Agency or Cenex Pit Stop defaulted on its obligations under the Fuel Agreement.

Under Michigan law the Bank's role is a ministerial one. It must make a prompt decision regarding whether to honor the letter of credit. The Bank's role was not to analyze the potential relationship between the applicants and the Lawrence Agency, but was rather to determine if the applicants personally owed anything to Plaintiff. As Plaintiff could not demonstrate strict compliance by showing funds owed to it by the applicants, the Bank was within its rights to refuse to honor the Letter of Credit.

It appears in this case that neither the Plaintiff nor the applicants wished to bear the risk of default by Defendant Lawrence Agency. However, Plaintiff, as a sophisticated wholesaler of petroluem, should have analyzed the terms of the Letter of Credit more carefully and insisted that the Letter of Credit require payment upon the Lawrence Agency's default. The documents on

which Daryl Lawrence signed as "owner" do not help Plaintiff's position. First, such documents have no relevance to the Bank's role in honoring the Letter of Credit as they are extraneous to the Letter of Credit. Secondly, even if the documents were relevant, Mr. Lawrence's role is vague on both documents. On neither document is it made clear that he is signing as owner of either the Lawrence Agency or as owner of Cenex Pit Stop. In fact, it is possible that he is signing as owner for his listed employer, Inergy Propane, LLC. The parties agree that Rudolph Lawrence signed the Fuel Agreement. Therefore, there is no evidence linking Daryl Lawrence to the underlying Fuel Agreement or to the Lawrence Agency.

Plaintiff's failure to investigate the law of strict compliance in Michigan regarding letters of credit and to peruse the Letter of Credit more carefully requires that it bear the loss of the Lawrence Agency's default.

## IV. Conclusion

For the reasons explained *supra*, Plaintiff's motion for summary judgment will be **DENIED**. The Bank's motion for summary judgment will be **GRANTED**. Plaintiff's claims against the Bank will be **DISMISSED** in their entirety with prejudice.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE